UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

BRODERICK HODGE,

            Plaintiff,            Case No. 2:15-cv-54

v.                                     Honorable R. Allan Edgar

WOODROW MYERS, JR., et al.,

            Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Broderick Hodge, a state prisoner currently confined at the Kinross Correctional Facility (KCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Chairman of Corizon Corporation Woodrow Myers, Jr., Director of Prison Health Service Dr. Sylvia McQueen, MDOC Director Daniel H. Heyns, Dr. Unknown Stevie, Physician Assistant Unknown Buskirk, Physician Unknown Canles, Nurse Practitioner Susan H. Wilson, and Officer C. Molina.

In Plaintiff's complaint, he alleges that on February 16, 2010, while he was confined at the St. Louis Correctional Facility, he received an accommodation for prescription oxford and tennis shoes. However, Plaintiff did not immediately receive his shoes and eventually purchased his own tennis shoes. On May 18, 2010, Defendant Buskirk cancelled the accommodation, stating that Plaintiff had already purchased the needed shoes. Defendant Stevie was Defendant Buskirk's supervisor and failed to take corrective action. Plaintiff states that he was not aware of the cancellation of the accommodation until 2014.

Plaintiff states that 4 years and 3 months later, officials at KCF "discovered" that Plaintiff's medical condition was permanent, although Plaintiff does not explain what he means by this statement. On May 18, 2014, Plaintiff received a misconduct ticket for possession of forged documents and disobeying a direct order from Defendant Molina. According to the misconduct report, Plaintiff came to the control center without state shoes on for his visit. When asked if he had a detail to be without state issue shoes, Plaintiff stated that he did not. However, Plaintiff then produced a medical detail for regular tennis shoes, so Plaintiff was allowed into the visitor room. Defendant Molina then called health care to verify the detail and discovered that Plaintiff did not

have a detail allowing him to be on a visit without state issue shoes. Defendant Molina ordered Plaintiff to return to his housing unit and get state issue shoes, at which point he could return to the visitor room. Plaintiff came to the control center again with another pair of black tennis shoes, which did not contain an inmate number. In addition, the signature on the detail had been forged. *See* docket #1-1, p. 13 of 28. Plaintiff received a hearing on May 21, 2014. In the hearing report, Hearing Officer Malette found Plaintiff not guilty:

> [Hearing Officer] finds that the prisoner reported to Control Center for a visit. Staff told him that he is supposed to wear state shoes. He told them that he has a Special Accommodation for medical shoes and does not own a pair of state shoes. The officer called Health Services and was informed that the prisoner does not have a current detail to be on a visit without state shoes. [Hearing Officer] has reviewed documents presented and there is a document presented by the prisoner in his defense. It states, "Approval to wear medical shoes on visit. J. Woods dated 9-9-13."
>
> Both charges are not upheld as the evidence presented by the prisoner does give him permission to wear medical shoes instead of state shoes on a visit.
>
> Health Service staff was contacted today and they state that the prisoner does not have a current Special Accommodation Notice for medical or prescription shoes. [Hearing Officer] informed the prisoner that effective IMMEDIATELY he does not have a Special Accommodation Notice for medical or prescription shoes and is required to send a kite to Health Services for evaluation. The prior authorization from Warden Woods at URF is cancelled.

*See* docket #1-1, p. 14 of 28.

On August 11, 2014, Plaintiff demanded to know why his shoe detail had been cancelled. Nurse Bethany A. Julian, R.N., responded by stating:

> In review of your record, your prescription shoe accommodation was cancelled on 5/18/2010 by PA Buskirk after the original order was cancelled in February, as you bought your own tennis shoes. It states

> in his note that, at that time (5/18/2010) there was "no indication for medical provided tennis shoes." Therefore, your accommodation has been invalid since 5/18/2010. At this point, you may rekite for a nursing evaluation if you wish, and to be referred to the medical service provider for a shoe accommodation.

*See* docket #1-1, p. 10 of 28.

Plaintiff asserts that the cancellation of his medical detail was undertaken without a doctor's approval and without re-examining Plaintiff's medical condition. Plaintiff asserts that between the cancellation of his detail in 2010 and August 22, 2014, Plaintiff struggled with chronic pain and suffered damage to his foot, all because Plaintiff purchased his own tennis shoes and Defendants decided that his medical condition had been resolved. Plaintiff claims that Defendants violated his rights under the Eighth Amendment. Plaintiff seeks damages.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff asserts that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for

his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

As noted above, Plaintiff purchased tennis shoes, which prompted Defendant Buskirk to cancel his medical detail. Plaintiff apparently continued to purchase his own tennis shoes until 2014, after he received a misconduct ticket for wearing the shoes. There is no indication that the shoes which would have been provided by the state were superior to the tennis shoes purchased by Plaintiff as a treatment for Plaintiff's medical condition. Therefore, the court concludes that the deprivation asserted by Plaintiff does not rise to the level of an Eighth Amendment violation.

Moreover, despite the fact that Plaintiff was unaware of the cancellation of his accommodation, to the extent that Plaintiff never received any "prescription" shoes from the MDOC, he was aware of this failure beginning in 2010. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[1]

---

[1] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981

Plaintiff's complaint is untimely. He asserts a claim arising in 2010. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claim accrued in 2010. However, he did not file his complaint until April of 2015, well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002). "If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*, 549 U.S. 199, 920-21 (2007).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

---

does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: 5/21/2015                              */s/ R. Allan Edgar*
                                              R. ALLAN EDGAR
                                              UNITED STATES DISTRICT JUDGE